[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
This cause of action arose as a result of an automobile accident that occurred on September 25, 1993. The plaintiff, Adam Oliver Wozniak ["Wozniak"], was and is a minor and brings this CT Page 4069-EE action by the plaintiff, Zofia Wozniak ["Mother"], his mother and next friend. The facts of the revised complaint, as alleged by Wozniak, are recited as pleaded. On June 29, 1993, the tortfeasor, Joseph Claffey ["Claffey"], was admitted to the defendant, New Britain General Hospital ["Hospital"], in a confused and disoriented state following an automobile accident. While at the Hospital, Claffey suffered hallucinations, became paranoid, psychotic and belligerent and was restrained. Claffey was treated and discharged from the Hospital on July 9, 1993.
On September 23, 1993, Claffey contacted Dr. Andre Lerer ["Lerer"] and informed him that he had an episode of unconsciousness which lasted two days. As a result of this communication, Claffey was advised to increase his medication. On September 25, 1993, Wozniak, then approximately three months of age, was a lawful pedestrian in a baby stroller. He was pushed by his Mother and accompanied by Eryk Wozniak ["Brother"]. Claffey, who was driving his vehicle in a psychotic state, struck Wozniak, his Brother and his Mother. In his revised complaint, Wozniak claims to have suffered severe injuries and damages as a result of this accident.
On October 6, 1995, Wozniak filed a forty-two count revised complaint against the Hospital alleging the following: (1) the Hospital was negligent with respect to its failure to provide Claffey with needed psychiatric evaluation and/or substance abuse treatment during and after his stay at the Hospital when it knew or should have known that said failure would render him a threat to others in the neighborhood; (2) the Hospital failed to provide Claffey with appropriate treatment on September 23 by either taking immediate steps to have him institutionalized, to see him, to have him seen and/or to insure proper supervision or control; (3) the Hospital failed to warn Claffey not to drive his motor vehicle after being advised that Claffey was unconscious for two days and (4) the Hospital failed to register Claffey's name with the DMV.
On October 23, 1995, the Hospital, Lerer and Neurological Associates, P.C. filed motions to strike the revised complaint in its entirety for failure to state a cause of action for which relief may be granted. Attached to these motions were Memoranda of Law in Support. On December 1, 1995, Wozniak filed a Memorandum in Opposition. On January 22, 1996, the Hospital, Lerer and Neurological Associates filed a Reply to Wozniak's Memorandum in Opposition. On April 22, 1996, Wozniak filed a CT Page 4069-FF Supplemental Memorandum in Opposition.
Whenever any party wishes to contest . . . (5) the legal sufficiency of any answer to any complaint, counterclaim or cross complaint, or any part of that answer including any special defense contained therein, that party may do so by filing a motion to strike the contested pleading or part thereof."Bouchard v. People's Bank, 219 Conn. 465, 468 n. 3, 594 A.2d 1
(1991). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Emphasis added; internal quotation marks omitted.) Novametrix Medical Systems v. BOCGroup, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegation would support a defense or a cause of action, the motion to strike must fail." Mingachos v. CBS, Inc., 196 Conn. 91,108, 491 A.2d 368 (1985).
The threshold issues before this court are whether the Hospital had a duty pursuant to statutory or case law to control and/or warn others of Claffey's disability in order to prevent injury to third parties and whether Wozniak, as a pedestrian, was a `foreseeable victim' in light of this duty.
Wozniak argues that the Hospital had a duty to inform the Department of Motor Vehicles ["DMV"] that Claffey's illness would detrimentally affect his ability to operate and control a motor vehicle.
The statute at issue, General Statutes § 14-46[1], states in pertinent part, "[a]ny physician may report to the department of motor vehicles, in writing, the name, age and address of any person diagnosed by him to have any chronic health problem which in the physician's judgment will significantly affect that person's ability to safely operate a motor vehicle, or to have recurrent periods of unconsciousness uncontrolled by medical treatment."
Construing the facts of this case in a light most favorable to the plaintiff, the court concludes that Claffey's epilepsy was a `chronic health problem' as defined by the statute and thus is in the category of illnesses which could have been reported to the DMV. CT Page 4069-GG
"It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent . . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment to the legislative policy it was designed to implement, and to its relationship to existing legislation . . . . In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation . . . . The task of determining whether a particular provision is mandatory or directory involves the same criteria, namely, the statute's language, the legislative history and the statutory context." (Citations omitted). AngelseaProductions, Inc. v. CHRO, 236 Conn. 681, 688-89 (1996).
A perusal of the legislative history of this statute shows the House, Senate and Joint Committee on Public Health, discussed the impact of imposition of immunity upon physicians for failure to report their patients under this statute.
On February 22, 1990, Attorney John Yacavone from the Department of Motor Vehicles proposed this revisionary bill before the Joint Committee of Public Health which repealed "the mandatory physician's reporting requirement which was actually a matter of a criminal sanction on physicians which the department felt was counterproductive in terms of getting the information that it required." Conn. Joint Standing Committee Hearings, Public Health, Pt. 1, 1990 Sess., p. 146. This bill further stated that "physicians may report the names of those diagnosed to have any physical or other impairment which will significantly affect the person's ability to operate safely. The physician making such a report would be immune from civil liability." Id.
Eleanor Budryk from the Protection and Advocacy for the Disabled offered the following scenario, "[I]f John Jones wanted a license and the doctor could determine whether or not, in the doctor's opinion, that particular illness in his particular case was such that impaired his ability to drive and if the physician felt that way, the physician could, he's not required, but could call the Department of Motor Vehicles and suggest that this person is one that should not have a license." Id., 151-152.
On April 25, 1990, the Senate amended the bill to remove "from the bill the provision that physicians would receive CT Page 4069-HH immunity." 33 S. Proc., Pt. 4, 1990 Sess., p. 1236. The House of Representatives through Representative Dezinno, stated, "[w]hen the file copy [of the bill] was created by the Committee, the onus was placed upon practitioners to make sure that they do mandatory reporting. We heard an awful lot of objections about it, and I see that the Senate, in their wise wisdom, removed through Senate "B" that part that would grant an immunity from civil liability based on the making or failure to make such a report. Now, the civil liability [immunity clause] is not there, and therefore, if the practitioner does not make the report — You now can impose a civil liability against that particular practitioner." 33 H.R. Proc., Pt. 20, 1990 Sess., p. 7065. In response to concerns that the physician's may be arbitrarily sued for exercising their medical judgment by their patient, Representative Gyle stated that because a doctor can make an anonymous report to the Motor Vehicle Department, concerns about liability are "really non-existent." Id. 7070. "The Department of Motor Vehicles has an Advisory Board. They would be the ones who would make the decision as to whether or not you would be able to drive. Therefore, any suing that you would do, if you felt that you were wronged, and even after your appeal, would probably be to that Medical Advisory Board." Id.
An analysis of this statute s legislative history demonstrates that the legislature expressly addressed and discarded civil immunity for physicians who failed to report medically impaired persons to the DMV. Thus, the Hospital's assertion that the statute does not provide a civil cause of action is in error. The history is silent, however, on the standard of care a physician should use to determine whether or not a patient is unfit to operate a motor vehicle due to his medical condition.
"It is a principle of statutory construction that a court must construe a statute as written." Krondes v. O'Boy, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 309700 (February 24, 1995) (Hauser, J.). "The words of [a] statute are to be given their commonly approved meaning, unless a contrary intent is clearly expressed. It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation . . . . When the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Citation omitted.)Harkins v. Allstate Insurance Co., Superior Court, judicial district of CT Page 4069-II New Haven at Meriden, Docket No. 246938 15 Conn. L. Rptr. 581 (January 3, 1996) (Silbert, J.) Words in a statute must be given their plain and ordinary meaning and be interpreted in their natural and usual sense unless the context indicates that a different meaning was intended." Id.
Section 14-46 of the General Statutes specifically states that the decision whether or not to report a patient's name to the DMV was "in the physician's judgment." No statutory standard of care was enunciated within either the plain language or the legislative history of the statute. Therefore, the court cannot impose a common law standard of ordinary or reasonable care, as suggested by Wozniak, where the statute does not provide for such a standard. "[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." American Universal Insurance v. DelGreco, 205 Conn. 178,193, 530 A.2d 171 (1987).
Wozniak has not pleaded enough facts to lead this court to the conclusion that the Hospital/Lerer did not exercise discretion in its decision not to submit Claffey's name to the DMV. "[I]f a pleading . . . on its face is legally insufficient, although facts may indeed exist which, if properly pleaded, would establish a cause of action upon which relief could be granted, a motion to strike is required." (Citations omitted.) Gurliacci v.Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991).
Accordingly, the defendants motion to strike the following counts is granted: two, eight, ten, twelve, fourteen, sixteen, eighteen, twentieth, twenty-four, twenty-six, twenty-eight, twenty-nine, thirtieth, thirty-six and thirty-seven.
The remaining issue is whether the Hospital breached a common law duty of care. In the recently decided case of Fraser v.United States, 236 Conn. 625 (1996), the Supreme Court discussed the circumstances that give rise to a physician's duty to prevent injury to a third person. "Existing Connecticut precedents impose only a limited duty to take action to prevent injury to a third person. Our point of departure has been that absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another . . . . In any determination of whether even a special relationship should be held to give rise to a duty to exercise care to avoid harm to a third person, foreseeability plays an important role." (Citations CT Page 4069-JJ omitted; internal quotation marks omitted.) Id., 632.
Relying on its' analysis in RK Constructors Inc. v. FuscoCorp., 231 Conn. 381, 650 A.2d 153 (1994), the Fraser court reaffirmed that a "[d]uty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action . . . . [the] threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant . . . . [t]hus initially, if it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff."(Citation omitted; internal quotation marks omitted.) Id., 385-86.
Count One of the revised complaint sets forth the facts which this court must consider in determining whether Wozniak was a `foreseeable victim.' According to the complaint, Claffey originally sought treatment at the Hospital on June 29, 1993 following an automobile accident. Revised Complaint, ¶ 2. During his stay, he suffered hallucinations, was paranoid, psychotic and belligerent. Revised Complaint, ¶ 5. He was discharged on July 9, 1993 and apparently had no further contact with the Hospital until September 23, 1993. Revised Complaint, ¶¶ 6-7. On that date, he informed Lerer that he experienced an episode of unconsciousness which lasted two days. Revised Complaint, ¶ 7. He was advised to increase his medication. Revised Complaint, ¶ 8. The accident occurred two days later. Revised Complaint, ¶ 9. "In reviewing a granting of a motion to strike, [the court] take[s] the facts alleged in the plaintiff's complaint and construe[s] the complaint in the manner most favorable to the plaintiff. This includes the facts necessarily implied and fairly provable under the allegations. It does not include, however, the legal conclusions or opinions stated in the complaint. If facts provable in the complaint would support a cause of action, the motion to strike must be denied." S.M.S.Textile v. Brown, 32 Conn. App. 786, 790, 631 A.2d 340 (1993).
The facts of this case, as pleaded, do not support a cause of action as they do not suggest any special duty of care flowing from the Hospital to Wozniak. In Fraser v. United States, supra,236 Conn. 625, the patient suffered from schizo-affective schizophrenia and accompanying delusions of violence. He was CT Page 4069-KK under psychiatric care as both an in and out patient for approximately six years. During the course of his treatment, the hospital was aware that he carried weapons and "advised him to get rid of [them]." Id., 629. Given these facts, the court concluded that the hospital had no duty to exercise control over the patient to prevent his assault on Fraser. It found "(1) our decisions defining negligence do not impose a duty to those who are not identifiable victims; (2) in related areas of our common law, we have concluded that there is no duty except to identifiable persons; (3) policy reasons inherent in the psychotherapeutic relationship and in the due process rights of mental patients counsel against imposing expansive duties to exercise control over such patients; and (4) courts in other jurisdictions have overwhelmingly declined to extend any duty to control to encompass harm to unidentifiable third persons." Id., 632.
In the present case, Wozniak asserts that the Hospital knew that Claffey suffered from seizures and periods of unconsciousness. However, Wozniak has failed to plead sufficient facts from which this court can infer that the Hospital was or should have been aware that Claffey was operating a motor vehicle in an impaired condition. The facts, as pleaded, state that Claffey was involved in a prior automobile accident and that he contacted Lerer with regard to his periods of unconsciousness. However, no facts were pleaded to suggest that the prior accident occurred as a result of Claffey's medical condition or that Lerer was aware or should have been aware that Claffey was operating a motor vehicle. Further, no facts were pleaded to suggest that Lerer failed to inform Claffey not to drive in his condition.
In order to determine whether a victim is foreseeable, the court in Fraser v. United States, supra, 236 Conn. 625, requires a showing that "the specific harm alleged by the plaintiff was foreseeable to the defendant . . . . [as] a specifically identifiable victim." (Citations omitted; internal quotation marks omitted.) Id., 633. Assuming that the facts alleged are true, they fail to prove that the Hospital either knew that Claffey was driving or had information that he had a propensity to drive while suffering seizures.[2] "[A] pleading must provide adequate notice of the facts claimed and issues to be tried. Whether a complaint furnishes such notice, however, is a fundamentally different question from whether it fails to state a cause of action because of the omission of an essential allegation, a deficiency that should be raised before trial." CT Page 4069-LLTedesco v. Stamford, 215 Conn. 450, 459, 576 A.2d 1273 (1990). Wozniak alleged insufficient facts in his complaint to prove that the Hospital could or should have known that Claffey was driving and therefore could or should have protected Wozniak as an identifiable or foreseeable' victim. Accordingly, the defendants' motion to strike the remaining counts is granted.