[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO STRIKE (#134)
 Facts
The plaintiff, Julie Zabensky, filed a fourteen-count substituted complaint on May 4, 1999, against two defendants, Lawrence Memorial Hospital (hereinafter "L M") and Dr. Robert S. Korn (hereinafter "Dr. Korn"). The complaint arises out of alleged acts of the defendants which occurred on or about July 31, 1996. Reading the allegations of the complaint as true, the facts are as follows.
The plaintiff entered the emergency room of L M seeking treatment for her injured foot. Dr. Korn, as an agent for L M, entered into a contract with the plaintiff for the sole and exclusive purpose of providing treatment for the plaintiff's injured foot. As part of this contract, Dr. Korn agreed to perform only the services requested by the plaintiff, not to perform any medical procedures upon the plaintiff without her consent, and to maintain confidentiality.
Dr. Korn instructed a nurse to withdraw blood from the plaintiff. The plaintiff did not knowingly consent, or have informed consent, to the blood withdrawal. Without disclosing to plaintiff the purpose of said blood withdrawal, and without CT Page 10784 obtaining the plaintiff's knowing consent, Dr. Korn disclosed the results of the blood test to the Connecticut Department of Motor Vehicles (hereinafter the "DMV"). L M sent the plaintiff a bill for her treatment and included the costs of the blood test.
As a result of this alleged conduct on the part of the defendants, the plaintiff allegedly incurred damages for the costs of the blood test, medical and psychological examination requested by the DMV, retaining her drivers' license and emotional distress.
These facts, as alleged by the plaintiff, culminated in the plaintiff's assertion of seven counts against L M and seven counts against Dr. Korn. The counts are as follows: counts one and eight, breach of contract; counts two and nine, breach of the implied covenant of good faith and fair dealing; counts three and ten, invasion of privacy, public disclosure of private facts; counts four and eleven, battery; counts five and twelve, breach of fiduciary duty; counts six and thirteen, infliction of emotional distress; and counts seven and fourteen, violation of the Connecticut Unfair Trade Practices Act.
On May 19, 1999, the defendants filed a motion to strike the entire substituted complaint. The plaintiff filed an opposition to their motion on June 11, 1999, and a supplemental opposition memorandum on June 14, 1999. This court heard oral argument at short calendar on June 15, 1999, and now issues this memorandum of decision.
 Discussion
"The purpose of a motion to strike is to contest. the legal sufficiency of the allegations of any complaints to state a claim upon which relief can be granted . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.)Peter-Michael. Inc. v. Sea Shell Associates, 244 Conn. 269,270-71, 709 A.2d 558 (1998)
The defendants state five grounds for their motion: (1) that because the complaint as a whole sounds in medical malpractice, the plaintiff was required to file a certificate of good faith CT Page 10785 pursuant to General Statutes § 52-190a, which she did not, so the complaint is legally insufficient; (2) that the invasion of privacy counts are legally insufficient because the defendants were carrying out a public service pursuant to General Statutes §14-46 and § 14-46f; (3) that the fiduciary duty counts are legally insufficient because the allegations do not establish that such a duty existed; (4) that the emotional distress counts are legally insufficient because, as a matter of law, the allegations do not demonstrate extreme and outrageous conduct; and (5) that the CUTPA counts are legally insufficient because the defendants are health care providers.
A. Medical Malpractice — Good Faith Certificate
The defendants argue that the complaint as a whole actually sounds in medical malpractice, and that the plaintiff merely mischaracterizes the true nature of her cause of action. Further, because the plaintiff failed to file a good faith certificate, the complaint as a whole is legally insufficient. The plaintiff counters this argument by pointing to her express allegations which, she argues, clearly sound in breach of contract, invasion of privacy, breach of fiduciary duty, battery, infliction of emotional distress and CUTPA. Therefore, the plaintiff argues, her complaint does not involve medical malpractice.
In an action for medical malpractice, the plaintiff is required to attach a certificate of good faith to the complaint. General Statutes § 52-190a. "Our cases explain that the failure to attach a certificate of good faith pursuant to § 52-190a
subjects the case to a motion to strike the complaint pursuant to Practice Book § 152(1) [now § 10-39] for failure to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Gabrielle v. Hospital of St. Raphael,33 Conn. App. 378, 383-84, 635 A.2d 1232 (1994)
[W]hether [a] plaintiff's cause of action is one for malpractice depends upon the definition of that work and the allegations of the complaint." Barnes v. Schlein, 192 Conn. 732,735, 473 A.2d 1221 (1984). "Connecticut law views a medical malpractice action to be a type of negligence action." Sackter v.St. Onge, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 504004 (April 14, 1993, Wagner, J.) (8 CSCR 494). "Malpractice has been defined as any professional misconduct of any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties; CT Page 10786 illegal or immoral conduct; improper or immoral conduct; misbehavior; wrongdoing; evil, bad, objectionable or wrong practice; practice contrary to established rules; [or] practice contrary to rules." (Internal quotation marks omitted.) Starrattv. Spencer, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 140926 (November 30, 1995, Tobin, J.).
"An allegation of medical malpractice does not generally give rise to a breach of contract claim. . . . A breach of contract claim is a distinct claim that may arise from the same facts and may exist where the physician and patient contract for a specific result." (Citations omitted.) Rumbin v. Baez, 52 Conn. App. 487,491, ___ A.2d ___ (1999)
In the present case, although the plaintiff's allegations may be read so as to involve malpractice by a medical professionals the plaintiff chose to sue under a "contract" theory. Counts one, two, eight and nine are entitled "Breach of Contract" and "Breach of Implied Covenant of Good Faith and Fair Dealing," and the allegations therein set forth the formation, terms and subsequent breach of a contract. The breach of contract counts do not in any way allege negligence or malpractice as part of the cause of action. Rather, the counts specify alleged acts of the defendants which constitute a deviation from the alleged agreement between the parties. Accordingly, the court finds that counts one, two, eight and nine are not medical malpractice claims and, therefore, are legally sufficient.
B. Invasion of Privacy
In addition to arguing that the invasion of privacy counts are really disguised medical malpractice claims, the defendants argue that they cannot be liable for invading the plaintiff's privacy because they were permitted by law to disseminate the results of the plaintiff's blood test to the DMV pursuant to General Statutes §§ 14-46 and 14-46f. In opposition, the plaintiff argues that the defendants impart facts outside the complaint, which is improper on a motion to strike, and that the defendants must plead this statute as a special defense.
General Statutes § 14-46 states, "[a]ny physician may report to the department of motor vehicles, in writing, the name, age and address of any person diagnosed by him to have any chronic health problem which in the physician's judgment will significantly affect that person's ability to safely operate a CT Page 10787 motor vehicle, or to have recurrent periods of unconsciousness uncontrolled by medical treatment." "The serious and important nature of communications between physician's and the DMV is underscored by C.G.S. § 14-46f which confers immunity from civil suit to the authors of such letters under certain conditions."Labenski v. Goldberg, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 510410 (February 17, 1993, Sferrazza, J.). Section 14-46f provides: "No civil action may be brought against . . . any physician for providing any reports, records, examinations, opinions or recommendations pursuant to sections 14-46a to 14-46g, inclusive. Any person acting in good faith without negligence or malicious intent in making any report to the commissioner or board pursuant to sections 14-46a to 14-46g, inclusive, shall be immune from civil liability." General Statutes § 14-46f.
"The invasion of personal privacy exception precludes disclosure only when the information sought does not pertain to legitimate matters of public concern, and is highly offensive to a reasonable person. When [the] intimate details of [one's] life are spread before the public gaze in a manner highly offensive to the ordinary reasonable [person], there is an actionable invasion of [the individual's] privacy, unless the matter is one of legitimate public interest. Perkins v. Freedom of InformationCommission, 228 Conn. 158, 173, 635 A.2d 783 (1993)." (Internal quotation marks omitted.) Department of Children and Families v.Freedom of Information Commission, 48 Conn. App. 467, 472,710 A.2d 1378 (1998)
"General Statutes § 14-46 was designed to protect members of the driving public . . . from drivers subject to periods of unconsciousness or loss of control." Trott v. Patterson, Superior Court, judicial district of Middlesex, Docket No. 064373 (February 9, 1999, Walsh, J.) (8 CSCR 262). "Section 14-46 of the General Statutes specifically states that the decision whether or not to report a patient's name to the DMV was in the physician's judgment.'" Wozniak v. New Britain General Hospital, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 551364 (May 15, 1996, Hennessey, J.) (16 Conn. L. Rptr. 568).
The allegations comprising the plaintiff's invasion of privacy counts do not mention that Dr. Korn "diagnosed [the plaintiff] to have any chronic health problem which in [Dr. Korn's] judgment will significantly affect [the plaintiff's] CT Page 10788 ability to safely operate a motor vehicle, or to have recurrent periods of unconsciousness uncontrolled by medical treatment.)' General Statutes § 14-46. Therefore, the defendants improperly ask this court to impart facts outside of the complaint in order to support their asserted defense under § 14-46 or § 14-46f. The court agrees with the plaintiff that this argument is more properly preserved by way of a special defense.
In addition, the invasion of privacy counts are clearly distinct from a medical malpractice claim. Although perhaps it may have been malpractice which caused the disclosure of the plaintiff's records to the DMV, as alleged, there is also a cause of action for invasion of privacy/public disclosure of private facts. Accordingly, counts three and ten are legally sufficient.
C. Battery
The defendants do not assert independent grounds for striking the battery counts apart from their core argument that the complaint as a whole involves medical malpractice. Because the intentional tort of battery is distinct from a medical malpractice claim, the plaintiff's battery counts are legally sufficient.
[B] attery is a basis for recovery against a physician under circumstances where the physician fails to obtain consent to the particular treatment or performs a procedure different from the one for which consent has been given, or where he realizes that the patient does not understand what the operation entails."Caron v. Adams, 33 Conn. App. 673, 688 (1994)
The plaintiff in the present case alleges that the defendants injected a needle into her body without her consent. This is a prima facie case of battery. Accordingly, the battery counts — four and eleven — are legally sufficient.
D. Infliction of Emotional Distress
"In order to establish a claim for intentional infliction of emotional distress, the plaintiff must plead that the defendant's conduct was extreme and outrageous. . . . The issue of whether the defendant's conduct rises to the level of extreme and outrageous behavior is a question of law to be decided by the court." (Citations omitted.) Luedee v. Strouse Adler Co.,
Superior Court, judicial district of New Haven at Meriden, Docket CT Page 10789 No. 257057 (January 29, 1998, Dunnell, J.) "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'." (Internal quotation marks omitted.) Mellaly v.Eastman Kodak Co., 42 Conn. Sup. 17, 18, 597 A.2d 846 (1991).
The conduct described in the plaintiff's complaint — injecting a needle into the plaintiff's arm without her consent, and disseminating the information contained within the plaintiff's blood to the DMV also without her consent — can hardly be said to involve the everyday rigors of living in society. Aside from possible medical malpractice, which is not alleged here, this conduct fits squarely within the parameters of what is "outrageous" and "utterly intolerable in a civilized community." Mellaly Eastman Kodak Co., supra,42 Conn. Sup. 18.
Accordingly, the infliction of emotional distress counts — six and thirteen — are legally sufficient.
E. Breach of Fiduciary Duty
"Rather than attempt to define a fiduciary relationship in precise detail and in such a manner to exclude new situations, we have instead chosen to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." (Internal quotation marks omitted.) Dunham v. Dunham, 204 Conn. 303, 320,528 A.2d 1123 (1987). "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." Id., 322. "The determination of whether such a fiduciary relationship exists is one of fact, and therefore, is not appropriately determined on a motion to strike. . . . Nevertheless, several courts have indicated that a fiduciary relationship does exist between a physician and a patient." (Citations omitted.) Starratt v. Spencer, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 140926 (November 30, 1995, Tobin, J.) CT Page 10790
The plaintiff has sufficiently alleged the existence of a fiduciary relationship with the defendants. Notwithstanding that the physician-patient relationship has commonly been found to be a fiduciary one, the plaintiff has alleged supporting facts demonstrating her reliance and trust upon the defendants' superior knowledge and skill.
Accordingly, the breach of fiduciary duty counts — five and twelve — are legally sufficient.
F. CUTPA
In order to sufficiently allege a violation of CUTPA against health care providers, such as the defendants here, a plaintiff must allege that certain entrepreneurial or commercial aspects of the defendants' practice were unfair or deceptive. See Haynes v.Yale-New Haven, 243 Conn. 17, 34, 699 A.2d 964 (1997). "[T]he touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services aside from medical competence is implicated, or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation." Id., 38.
In the present case, the plaintiff alleges that the manner in which the defendants administered medical treatment in contravention to an agreement between the parties, and subsequent billing for treatment which was nonconsented, in a wilful and wanton manner, constitutes unfair and deceptive practices under CUTPA. The plaintiff is not alleging that the defendants' actual maltreatment of the plaintiff is a CUTPA violation. Rather, the plaintiff alleges that the conduct of dishonoring an agreement and billing practices for unwanted procedures are violations of CUTPA. The court finds that these allegations sufficiently concern the entrepreneurial or commercial aspects of the defendants' medical practice.
Accordingly, the CUTPA counts — seven and fourteen — are legally sufficient.
 Conclusion
For the foregoing reasons, the defendants' motion to strike is denied. CT Page 10791
Martin, J.
CT Page 10791