## RK CONSTRUCTORS, INC. *v.* FUSCO CORPORATION ET AL.
## (14997)

PETERS, C. J., and CALLAHAN, BORDEN, BERDON and DUPONT, Js.

Argued September 22—decision released December 6, 1994

*Stephen J. Sinatro,* for the appellant (plaintiff).

*Matthew G. Conway,* for the appellee (named defendant).

CALLAHAN, J. The principal issue in this appeal is whether an employer may maintain a common law negligence action against a third party tortfeasor to recover for economic loss in the form of increased workers' compensation premiums and lost dividends arising out of the tortfeasor's negligence. The plaintiff, RK Constructors, Inc., brought this action against the defendant Fusco Corporation (Fusco) after Fusco's agent negligently injured the plaintiff's employee on a construction job site.[1] The plaintiff claimed that as a result of Fusco's negligence, the plaintiff's workers' compensation experience modification rating was reduced, which, in turn, caused the plaintiff's insurance premiums to increase and a potential dividend to be lost. Fusco filed a motion to strike the first and third counts of the plaintiff's complaint for failure to state a cognizable cause of action and, after a hearing, the

[1] The plaintiff's revised complaint was in four counts. Counts one and three set forth causes of action against Fusco, while counts two and four alleged causes of action against the S.G. Marino Crane Service Corporation, which is not a party to this appeal.

trial court, *Koletsky, J.,* granted its motion. The plaintiff thereafter appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The relevant facts may be summarized briefly as follows.[2] On October 24, 1989, Richard M. Aldrich, an employee of the plaintiff, was working as a carpenter at a construction site in Hartford known as the Goodwin Square Building. Fusco was the general contractor on the project, and had leased a crane from the S.G. Marino Crane Service Corporation in order to move materials to and from various floors of the Goodwin Building. While the crane was in the process of lowering a load of lumber from the thirty-first floor of the building, several planks fell from the sling that held them and struck Aldrich, who was working on the ground below. Because of the accident, the plaintiff incurred a reduced workers' compensation experience modification rating, and, as a result, suffered an increase in its insurance premiums and lost an anticipated dividend that it claims it otherwise would have received.

The plaintiff's sole contention is that the trial court incorrectly struck counts one and three of its complaint in which it sought to recover its economic losses for failure to state a cause of action against Fusco. Specifically, the plaintiff argues that the court misconstrued the origin or cause of the injuries and relied upon inappropriate case law to justify its decision. We disagree.

---

[2] As Fusco noted in its brief, for the purpose of a motion to strike, the moving party admits all facts well pleaded. *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 108, 491 A.2d 368 (1985); *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 545, 427 A.2d 822 (1980).

"The motion to strike . . . replaced the demurrer in our practice. Its function, like that which the demurrer served, is to test the legal sufficiency of a pleading." (Citations omitted.) *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 545, 427 A.2d 822 (1980). In reviewing the granting of a motion to strike, we construe the facts alleged in the complaint in a light most favorable to the pleader. If facts provable under the allegations would support a defense or a cause of action, the motion to strike must be denied. Id. "In order to reverse the judgment of the trial court, therefore, this court must find that the allegations of the plaintiff's complaint, if proven, would constitute negligence of the defendant." *Coste* v. *Riverside Motors, Inc.*, 24 Conn. App. 109, 111, 585 A.2d 1263 (1991).[3]

The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. *Catz* v. *Rubenstein*, 201 Conn. 39, 44, 513 A.2d 98 (1986); *Calderwood* v. *Bender*, 189 Conn. 580, 584, 457 A.2d 313 (1983); W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 30, pp. 164–65. Our analysis in this case begins and ends with the first element, duty.

"The existence of a duty is a question of law and '[o]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand.' " *Petriello* v. *Kalman*, 215 Conn. 377, 382–83, 576 A.2d 474 (1990). If a court determines, as a matter of law, that a defend-

---

[3] The plaintiff repeatedly indicated before the trial court that this case does not involve any claims under the Workers' Compensation Act, General Statutes § 31-275 et seq. As stated by the plaintiff's counsel, "[t]he way I would have the Court look at it is it's just a regular tort damage . . . ." Although Fusco argues that the Workers' Compensation Act provides the exclusive remedy for an injured employer against a third party tortfeasor, in light of our conclusion that the plaintiff has not stated a common law negligence cause of action, we need not address that issue.

ant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant. Thus, "we must determine whether the [trial] court's conclusion that [Fusco] owed no duty to the plaintiff with respect to [causing an increase in workers' compensation insurance premiums] was 'legally and logically correct.' " Id., 383.

Duty is a "legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 25:05, p. 25–7. Although it has been said that "no universal test for [duty] ever has been formulated"; W. Prosser & W. Keeton, supra, § 53, p. 358; our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. "The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" (Citation omitted; internal quotation marks omitted.) *Frankovitch* v. *Burton,* 185 Conn. 14, 20–21, 440 A.2d 254 (1981); *Noebel* v. *Housing Authority,* 146 Conn. 197, 200–201, 148 A.2d 766 (1959); *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 237, 21 A.2d 402 (1941). Thus, initially, if it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of

the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff.

A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally "foreseeable," yet for pragmatic reasons, no recovery is allowed. See, e.g., *Maloney* v. *Conroy,* 208 Conn. 392, 400–401, 545 A.2d 1059 (1988) (looking beyond foreseeability, this court imposed limitations on the right of a bystander to recover for emotional distress that allegedly resulted from medical malpractice of doctors in their treatment of the plaintiff's deceased mother). A further inquiry must be made, for we recognize "that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." W. Prosser & W. Keeton, supra, § 53, p. 358. "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." (Internal quotation marks omitted.) *Maloney* v. *Conroy,* supra, 401–402. The final step in the duty inquiry, then, is to make a determination of "the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." W. Prosser & W. Keeton, supra, § 43, p. 281.

Although this court has never examined the precise issue of duty presented by this appeal, we conclude that the trial court correctly cited *Steele* v. *J & S Metals, Inc.,* 32 Conn. Sup. 17, 335 A.2d 629 (1974), in support of its holding. In *Steele,* an employer had brought a negligence action against a third party tortfeasor who had injured the employer's key employee. The employer

claimed that the injury to its employee caused its business to lose profits, and that the defendant was responsible to the employer for those damages. The defendant demurred, alleging that the plaintiff failed to state a viable cause of action. Despite the obvious foreseeability of the plaintiff's lost profits, the court nevertheless dismissed the plaintiff's complaint.

The plaintiff in the present case argues that *Steele* is inapposite for two primary reasons. First, it argues that the holding in *Steele* was premised upon the fact that the employer's damages resulted directly from the *injuries* suffered by the employee, whereas in the present case, the plaintiff's damages flowed from the *accident* itself. Second, the plaintiff argues that because Fusco, as an employer, must have been aware of the effects an accident would have upon the plaintiff's workers' compensation premiums and policy dividends, foreseeability existed and created a duty that may not be present in other contexts. We are unpersuaded.

Although it may have been foreseeable to Fusco that by causing an accident to the plaintiff's employee, the plaintiff's workers' compensation premiums would increase, this fact alone does not conclude our inquiry. We must proceed to make the further policy determination of whether Fusco's responsibility for its negligent conduct should extend to these particular consequences and this particular plaintiff. It is irrelevant to this determination whether the plaintiff's damages flowed from the accident itself or from the resulting injuries to its employee. We fail to see the distinction. What is relevant, rather, is the measure of attenuation between Fusco's conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand.[4] The *Steele* court concluded

---

[4] This inquiry is quite similar to the analysis that we engage in with respect to the third element of negligence, proximate causation. Indeed, as Profes-

that when a defendant injures a plaintiff's employee, the nexus between that act and the plaintiff and its lost profits is simply too tenuous to impose liability for such collateral consequences. The factors in the present case are nearly identical. The defendant is a third party who caused physical injury, not to the plaintiff itself, but to the plaintiff's employee. Moreover, the alleged damages to the plaintiff that resulted from the physical injury to its employee are purely economic in nature. In the absence of a controlling statute or overriding public policy consideration, we conclude that the economic harm to the plaintiff in the form of increased premiums and lost dividends is simply too remote to be chargeable to the defendant third party tortfeasor, Fusco.

Although the plaintiff cites an Ohio case[5] and a workers' compensation treatise[6] as support for its proposed cause of action, we note that our decision follows those of numerous jurisdictions that have previously addressed the issue.[7] Accordingly, we conclude that the

sors Prosser and Keeton have noted, "[t]he question whether there is a duty has most often seemed helpful in cases where the only issue is in reality whether the defendant stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit. Or, reverting again to the starting point, whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion which has in fact occurred. Or, again reverting, whether the conduct is the 'proximate cause' of the result. The circumlocution is unavoidable, since all of these questions are, in reality, one and the same." W. Prosser & W. Keeton, supra, § 42, p. 274; see also id., § 53, p. 358.

[5] *Ledex, Inc.* v. *Heatbath Corp.,* 10 Ohio St. 3d 126, 461 N.E.2d 1299 (1984).

[6] 2B A. Larson, Workmen's Compensation (1993) §§ 77.30 and 77.31, pp. 14-1022–26.

[7] See, e.g., *Continental Casualty Co.* v. *P.D.C., Inc.,* 931 F.2d 1429 (10th Cir. 1991); *Erie Castings Co.* v. *Grinding Supply, Inc.,* 736 F.2d 99 (3d Cir. 1984); *Crab Orchard Improvement Co.* v. *Chesapeake & O. Ry. Co.,* 115 F.2d 277 (4th Cir. 1940); *Zawadzki* v. *Checker Taxi Co.,* 539 F. Sup. 207 (N.D. Ill. 1982); *Fischl* v. *Paller & Goldstein,* 231 Cal. App. 3d 1299, 282 Cal. Rptr. 802 (1991); *Unique Paint Co.* v. *Wm. F. Newman Co.,* 201 Ga. App. 463, 411 S.E.2d 352 (1991); *North Georgia Electric Membership Corp.* v.

trial court correctly granted Fusco's motion to strike counts one and three of the plaintiff's complaint for failure to state a cause of action.

The judgment is affirmed.

In this opinion PETERS, C. J., and BORDEN and DUPONT, Js., concurred.

BERDON, J., concurring. I agree that the doors to the court should not be opened to allow a plaintiff employer to recover from the defendant tortfeasor damages in the form of increased premiums resulting from workers' compensation payments made to the injured employee. However, I agree not because, as the majority finds, the nexus between the conduct of the tortfeasor and the employer's economic injury is "too tenuous to impose liability."[1] Rather, I agree because the legislature has already provided a statutory remedy for the employer in such a case. This statutory rem-

*Thomason & Holsomback Construction Co.,* 157 Ga. App. 719, 278 S.E.2d 433 (1981); *Northern States Contracting Co.* v. *Oakes,* 191 Minn. 88, 253 N.W. 371 (1934); *Flying Scotsman, Inc.* v. *Leach,* 53 Or. App. 14, 630 P.2d 900 (1981); *Whirley Industries, Inc.* v. *Segel,* 316 Pa. Super. 75, 462 A.2d 800 (1983); see also W. Prosser & W. Keeton, supra, § 129, p. 998 ("[r]ecovery has also been denied for damages other than the value of the services themselves, as for example . . . an increased workmen's compensation insurance premium resulting from the injury").

Moreover, the plaintiff's reliance upon the Larson treatise is misplaced. Although Professor Larson indeed makes a case for allowing an employer to maintain a negligence cause of action against a third party tortfeasor for increased compensation premiums and lost dividends, he specifically limits this argument to cases in which the employer has no subrogation rights under the applicable workers' compensation third party statute. 2B A. Larson, supra, § 77.30, p. 14-1022. In the present case, the applicable workers' compensation statute allows an employer to assert subrogation rights to recover benefits paid to its employee; General Statutes § 31-293 (a); and the plaintiff in fact exercised those rights. See *Aldrich* v. *Fusco Corp.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 91-0503285 S (action withdrawn May 31, 1994).

[1] I would not reach the issue of whether the nexus between the conduct of the tortfeasor and the injury in this case is too tenuous to impose liability.

edy provides the exclusive remedy that a plaintiff employer may seek from the third party tortfeasor and, as a practical matter, serves to make whole the employer so that it need not pursue additional, unenumerated remedies.

First, the legislature has already provided and defined the exclusive remedy for the plaintiff employer. The Workers' Compensation Act (act); General Statutes § 31-291 et seq.; grants the employer of the injured employee the right to bring an action against the tortfeasor to recover workers' compensation benefits paid to its injured employee. General Statutes § 31-293 (a). Similarly, the act grants the employer the right to intervene as a plaintiff in an action brought by the injured employee against the tortfeasor, and further provides that the employer shall take precedence over the injured employee in recovering any damages awarded. Id. In either case, the legislature allows the employer to recover from the liable third party tortfeasor "(1) the amount of any compensation which he has paid on account of the injury . . . and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of the injury. . . ." General Statutes § 31-293 (a).

This statutory itemization indicates that the legislature intended these workers' compensation remedies to be the only ones available to a plaintiff employer in an action against a third party tortfeasor. See *Panaro* v. *Electrolux Corp.*, 208 Conn. 589, 605, 545 A.2d 1086 (1988); *State* v. *Kish*, 186 Conn. 757, 766, 443 A.2d 1274 (1982); see also *Winslow* v. *Lewis-Shepard, Inc.*, 212 Conn. 462, 562 A.2d 517 (1989) (remedy provided by state products liability act bars action seeking additional damages). In such a situation, "[a] damage suit as an alternative or additional source of compensation, becomes permissible only by carving a judicial excep-

tion in an uncarved statute. . . ." (Internal quotation marks omitted.) *Panaro* v. *Electrolux Corp.,* supra, 605. This the court should not do.

Second, as a practical matter, the statutory remedy provided by the legislature should prevent an employer's workers' compensation premiums from increasing. The statutory remedy, in essence, allows the employer to recover amounts it has paid or will become obligated to pay to the employee as a result of the injury caused by the liable third party tortfeasor. If the employer, and the employer's insurer as a result of its subrogation rights, are thereby made whole for the workers' compensation benefits it paid out, the employer should not experience any change in its workers' compensation loss ratio. As a result, the employer should not suffer any significant increases in its workers' compensation premiums or costs.

Accordingly, I concur in the result.