[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
In this case, plaintiff David Johnson seeks money damages for intentional infliction of emotional distress from five sworn members of the Glastonbury (CT) Police Department defendants Wayne Martin, Sueann Furlong, Edward Bernacki, Francine Cimino and Steven Gray — whom he accuses of sending him a humiliating Christmas card while he was incarcerated in lieu of bail at the Hartford Correctional Center in December of 1994. According to his five-count Complaint dated January 16, 1996, the cover of the card read as follows:
 Santa knows whether you have been naughty or nice. See Dick. Dick was good all year. Good. Good. See Jane. Jane was good all year. Good. Good. See Spot. Spot was not good all year, but considering he is just a simple creature with no concept of good or bad, he did the best he could do.
Id. Count I ¶ 9. To this was added the following handwritten note: "But David was bad, very bad!" Id., Count I ¶ 11.
On the inside, the card contained the following punch line: "What's your excuse? Merry Christmas!" The card was signed by defendant Furlong, who added the names of other employees of the Glastonbury Police Department without the knowledge or consent of those employees, Id., Count I ¶ 12. Furlong sent the plaintiff the card at the Hartford Correctional Center. Id., Count I ¶ 13.
The plaintiff alleges that defendant Furlong decided to send CT Page 4754 him the card in question at his place of incarceration in order to ridicule, humiliate and enrage him, and to inflict extreme emotional distress upon him by having the card signed by all members of the Glastonbury Police Department. Id., Count I ¶ 8. As a direct and proximate result of her conduct, to which defendant Furlong and her co-defendants agreed, id., Count I ¶ 14; the plaintiff claims that he
 suffered extreme emotional distress in that he was mocked and ridiculed by peace officers sworn to defend him; he was cruelly and without justification made to suffer by the humiliating reminder of his incarceration that he was both unable to secure his own liberty by posting bond or to enjoy the holiday season with loved ones and family.
Id., ¶ 15.
The defendants have moved to strike the Complaint on the ground that it fails to state a claim upon which relief can be granted against any of them. They claim, more particularly, that the plaintiff has failed to allege facts which, if proven at trial, would establish the sort of extreme and outrageous conduct that is necessary to prevail in an action for intentional infliction of emotional distress.
I
"The motion to strike . . . [tests] the legal sufficiency of a pleading." (Citation omitted.) RK Constructors, Inc. v. FuscoCorp., 231 Conn. 381, 384, 650 A.2d 153 (1994). "The motion to strike . . . admits all facts well pleaded . . . is The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them . . . and if facts provable under the allegations would support a defense or a cause of action, the demurrer [motion to strike] must fail." (Citations omitted; internal quotation marks omitted.) Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989).
II
"In order for the plaintiff to prevail in a case for liability under . . . the intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or CT Page 4755 that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous, (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) DeLaurentis v. New Haven, 220 Conn. 225, 266-67,597 A.2d 807 (1991). Regarding extreme and outrageous conduct, "the rule . . . is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.)Peytan v. Ellis, 200 Conn. 243, 253 n. 5, 510 A.2d 1337 (19867), citing Prosser Keeton, Torts (5th Ed.)) § 12, 18 p. 60.
In Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 19,597 A.2d 846 (1991), the Court stated that "[c]onduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." The Court, however, further found that the "extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know." I Restatement (Second), Torts § 46, comment (f). Id., 20. The Court also stated that "`The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.' 1 Restatement (Second), Torts § 46, comment (e)." Id.
III
If the Christmas card in question were sent to an average citizen living under normal circumstances, no action for intentional infliction of emotional distress could be based upon it. Though the sending of such a card might prove to be mildly upsetting to a person who received it, it could hardly be found to constitute more than a thoughtless display of bad manners or poor taste, to which liability does not attach.
When, however, the conduct here alleged is considered in the light most favorable to sustaining the plaintiff's claim, CT Page 4756 reasonable minds can differ as to whether a jury might fairly characterize it as extreme and outrageous, exceeding all bounds usually tolerated in a civilized society. This is so for the following reasons.
First, the sending of this card was done by officers of the law, whose sworn duty it is to protect and respect the rights of all citizens, innocent or guilty, by impartially enforcing the law. Naturally, a taunting, derisive message from such an officer is more unsettling to the average citizen than a similar communication from a private citizen, for it carries with it the implicit suggestion that the law's protection may not be available to the recipient in his time of need.
Second, this particular recipient of the officer's communication was already in an exceedingly vulnerable position under the law, as he had been arrested for a crime and incarcerated in lieu of bond. If anyone then needed the law's protection, both for his right to release on a reasonable bail and his right to be presumed innocent until proven guilty, it was the plaintiff. Hence, here, the officers' sending of the taunting Christmas card had the special potential to be emotionally upsetting.
Third, this potential was further aggravated by the special circumstances which led to the plaintiff's incarceration, for he had been arrested by an officer from the same police department whose officers had sent-him the card. Thus, to a significant degree, the plaintiff's fate was already in the hands of those very officers, for they could easily be assigned to any aspect of his case, including the development of follow-up information that might add to or detract from his defense or influence the decision whether or not to release him. By sending him the card, the officers may well be found to have abused a position of real or apparent authority over him, thus rendering their otherwise banal conduct so extreme and outrageous as to make it actionable as intentional infliction of emotional distress.
Fourth, and of no small additional significance, was the defendant's alleged addition of other officers' names to the taunting card so as to give the plaintiff the impression it had been sent by the entire Glastonbury Police Department. If an identical card had been sent to the plaintiff signed only by the five defendants, the plaintiff might have been given to believe that a mere handful of unprofessional officers, with no necessary CT Page 4757 involvement in his case or resulting responsibility for his fate, had made an inappropriate, hurtful gesture which yet didn't threaten his life and his liberty. Here, however, the intended message for the plaintiff was that the entire department whose efforts would determine his future had joined together to ridicule and humiliate him. The alleged purpose of such conduct, which is claimed to have been accomplished, was to upset and enrage the plaintiff, demoralizing him by the message that those dutybound to protect his liberty were bent on depriving him of it.
In sum, the Christmas card here at issue must be read and understood in its proper context. So read and understood by a person in the plaintiff's situation, it may properly be understood to have communicated a message of the most upsetting and sinister sort: that in spite of his theoretical right to the law's protection, the officers of the law, in whose hands his fate then rested, had convicted and sentenced him already. A jury in late Twentieth Century America can reasonably conclude that such conduct, directed by powerful public officials against a powerless but presumptively innocent private citizen, is extreme and outrageous conduct of a sort that is totally unacceptable in a civilized society.
For the foregoing reasons, the defendants' Motion to Strike is hereby denied.
Sheldon, J.