[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT #119
The defendants move for partial summary judgment on the ground that the plaintiff' claim is time-barred by the applicable statute of limitations.
On May 25, 1994, the plaintiffs, Steven Bills and Donald Fitzpatrick, filed a two-count complaint against the defendants, Emhart Corporation (Emhart), BD, Inc. and The Black Decker Corporation (Black Decker). The plaintiffs, on August 8, 1995, filed a second amended complaint alleging in count two a breach of fiduciary duties and requesting attorneys fees in the payer for relief.
On December 4, 1995, the defendants filed their answer and special defenses to the second amended complaint, asserting as a special defense that the plaintiffs' second count was barred by the statute of limitations set forth in General Statutes § 52-577. Thereafter, on January 2, 1996, the defendants filed a motion for summary judgment as to count two on the grounds that the claim was time-barred, the defendants owed no fiduciary duty to the plaintiffs, and no basis existed for an award of attorneys fees. The defendants filed a memorandum in support of their motion and a copy of the 1986 Stock Option Plan. On March 20, 1996, the plaintiffs filed a memorandum in opposition, a copy of the December 22, 1988 change in control amendment adopted by Emhart's board of directors and a copy of United States District Court Judge Nevas' opinion in Lamb v. Emhart Corp.,
CV No. H-90-15 (AHN), April 7, 1994.[1]
The following facts are undisputed. The plaintiffs were employed by Advanced Technology, Inc. of Delaware (ATI), which, at all times relevant, was a wholly-owned subsidiary of Emhart. In connection with their employment, the plaintiffs entered into a stock option contract with Emhart, subject to the terms of the 1986 Stock Option Plan (Plan). Section 6(e) of the Plan states in relevant part:
 (e) Termination of Employment. Upon termination of an option holder's employment, for any reason other than the death or deliberate, willful, or gross misconduct, his option shall be exercisable only to the extent he would have been permitted to purchase shares under his option at the date of such termination, and such option shall expire unless exercised within the three (3) month period following the date of such termination.
Section 10 of the Plan further provided:
 10. Termination and Amendment. The Board of Directors may in its discretion terminate this Plan at any time with respect to any CT Page 8248 shares of stock for which options have not theretofore granted may be made without the consent of the respective holders thereof.
In Lamb v. Emhart Corp., supra, Judge Nevas examined Emhart's 1986 Stock Option Plan, which is the same plan at issue here. The court found the following facts regarding the backyard of the change in control amendment.
"[O]n December 22, 1988, Emhart's board of directors adopted a change of control amendment (Amendment) to the Plan which added the following provision.
 6(i) Effect of a Change in Control. Notwithstanding Subparagraph (b) or (e) above, in the event of a Change in Control as hereinafter defined, all options outstanding on the date of such Change shall become immediately and full exercisable."
Lamb v. Emhart Corp., supra, 17.
The Board also passed the following directive on December 22, 1988: "RESOLVED: That the Management Compensation Stock Option Committee shall amend the stock option agreements evidencing options outstanding under the 1986 [1983] Stock Option Plan on the date such Amendment is adopted to reflect the terms of such amendment." Lambv. Emhart Corp., supra, 17.
"Further, in its schedule 14D-9 filed with the [Securities and Exchange Commission], Emhart represented to that body that Emhart and B D, Inc. had agreed to provide that each Emhart stock option which was `outstanding' on the date of the merger would become fully exercisable and vested on the date of the change in control." (Emphasis in original.) Lamb v. Emhart Corp.,
supra, 34-35. On April 4, 1989 the Senior Vice-President of Emhart, Richard F. Vitkus, sent a memo (Vitkus Memo) addressed to Emhart Stock Option Holders advising them that:
 The merger agreement between Emhart and Black and Decker provides that immediately following Black and Decker's purchase of Emhart shares under the Tender Offer, all outstanding Emhart stock options, whether or not currently exercisable, will become fully exercisable and vested, and the option holders will be entitled to receive an amount of cash for each option share equal to the `spread' between the option exercise price and the Tender Offer price of $40 per share. Because all options are being cashed outCT Page 8249 in this manner, it will not be necessary to exercise your option." (Emphasis in original.)
Id., 35. Emhart did not send the Vitkus Memo to the plaintiffs. On April 28, 1989, Emhart and Black Decker consummated a merger, which constituted a change of control under the Amendment. It is based on this change in control that the plaintiffs allege their stock options became fully vested and exercisable.
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Citation omitted.) Doty v. Mucci, 238 Conn. 800,805 (1996). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted.) Doty v. Mucci,238 Conn. 800, 805 (1996). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted.) Id.
"The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted.) Saurez v. Dickmont PlasticsCorp., 229 Conn. 99, 105-06, 639 A.2d 507 (1994).
"Summary judgment may be granted where the claim is barred by the statute of limitations." (Citations omitted.) Doty v. Mucci, supra, 806. Actions for breach of fiduciary duty are governed by the three-year statute of limitations set out in General Statutes § 52-577. United Aircraft Corporation v. International Association of Machinists, 161 Conn. 79, 107,285 A.2d 330 (1971), cert. denied, 404 U.S. 1016, 92 S.Ct. 675,30 L.Ed.2d 663 (1972). General Statutes § 52-577 states that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."
The alleged wrongful conduct occurred on or about April 28, 1989, when the merger was consummated. The defendants argue that the three-year statute of limitations expired prior to both the plaintiffs' filing of their second amended complaint. August 8, 1995, and their original complaint, May 25, 1994. In Opposition, the plaintiffs argue that the statute of limitations was tolled pursuant to the continuing course of conduct doctrine.
"When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course CT Page 8250 of conduct is completed." (Citation omitted.) Sanborn v. Greenwald, 39 Conn. App. 289, 295, 664 A.2d 803, cert. denied,235 Conn. 925, 666 A.2d 1186 (1995). "[T]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Citations omitted: internal quotation marks omitted.) Blanchette v. Barrett, 229 Conn. 256, 275, 640 A.2d 74
(1994).
The plaintiffs argue that the special relationship that existed between the parties was fiduciary, and present two arguments as to why a fiduciary relationship existed.
First, the plaintiffs maintain that the directors and officers of Emhart had a fiduciary duty to deal honestly with its former employees, and that Emhart failed to do so by refusing to request plaintiffs' consent to the Amendment, pursuant to section 10 of the Plan, and failing to send the plaintiffs a copy of the Vitkus Memo. "The existence of a duty is a question of law." (Citations omitted; internal quotation marks omitted.) RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384,650 A.2d 153 (1994); see also Van Deusen v. Dratch, Superior Court, judicial district of Litchfield, Docket No. 068758 (May 7, 1996) (Pickett, J.) (granting summary judgment based on finding that no fiduciary relationship existed). "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." (Citations omitted.) Dunham v. Dunham, 204 Conn. 303, 322, 528 A.2d 1123 (1987).
The plaintiffs' first argument lacks merit because employers did not owe a fiduciary duty to employees. Grappo v. Atitalia Linee Aeree Italiane, S.P.A., 56 F.3d 427, 432 (2d Cir. 1995) (employer owes no fiduciary duty to at-will employees); Byington v. Biotechnologies, Inc., 869 F. Sup. 338, 345 (D.Md. 1994). CT Page 8251
Second, the plaintiffs argue that by virtue of Emhart's exercise of sole discretion in the administration of the stock option program, it owed a fiduciary duty to the plaintiffs. The plaintiffs did not cite, and research did not reveal, any cases that stand for the proposition that a company administering a stock option plan owes a fiduciary duty to the option holder.[2] The assess cited by the plaintiffs, finding the existence of fiduciary relationship in connection with the administration of benefits programs, were determined pursuant to the Employee Retirement Income Security Act (ERISA),29 U.S.C.A. § 1001 et seq. The plaintiffs do not allege, however, that the Plan is governed by ERISA. Furthermore, another Connecticut court has found that "a stock bonus plan does not fit within ERISA's definitional framework of an employee welfare or pension plan." Mantos v. Combustion Engineering, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 385445 (April 1, 1993) (Hammer, J.).[3]
This court finds that no fiduciary relationship existed between Emhart and the plaintiffs. Because no fiduciary relationship existed, the statute of limitations was not tolled under the continuing course of conduct doctrine. Therefore because the plaintiffs failed to file within the three-year statute of limitations, the defendants' motion for summary judgment on count two of the plaintiffs' second amended complaint is granted.