[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE #102
The Plaintiff, Christopher Anastasio, began his employment as Maintenance Supervisor with the Knights of Columbus (KC) on April 17, 1995. He worked at KC headquarters in New Haven and "reported" to the Facilities Manager, Biagio Gulino. On November 20, 1996, Anastasio was terminated by Gulino, who Anastasio alleges, was acting within the scope of his employment and on behalf of KC at all relevant times. He subsequently filed this four count wrongful discharge complaint.
In the first count, Anastasio alleges intentional infliction of emotional distress. He alleges negligent infliction of emotional distress regarding the termination of his employment in the second count. In the third count, Anastasio claims a breach of an employment contract between himself and KC. Finally, the fourth count alleges that the termination of Anastasio's employment was undertaken in violation of public policy.
The defendants have now moved to strike all four counts of Anastasio's complaint[1]. They seek to strike the first count, which alleges intentional infliction of emotional distress, on the ground that Anastasio fails to allege "extreme and outrageous" conduct by Gulino. As to the second count, alleging negligent infliction of emotional distress, KC and Gulino contend that Anastasio fails to allege unreasonable conduct directed at Anastasio by KC and Gulino during the termination process itself. KC and Gulino also move to strike the third count, which alleges a breach of contract, on the ground that Anastasio fails to allege that they intended to be bound by any alleged "agreement" and also because Anastasio signed a specific disclaimer of any oral contract when he applied for the position. Finally, the defendants claim that the fourth count fails to identify any important public policy recognized under Connecticut law.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp.,240 Conn. 576, 580, 693 A.2d 293 (1997). The court is limited to the facts alleged in the plaintiffs' complaint in ruling on a motion to strike, and the court construes such facts in a light most favorable to the plaintiff. Id. "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded." RKConstructors, Inc. v. Fusco Corp., 231 Conn. 381, 383 n. 2,650 A.2d 153 (1994). "This includes the facts necessarily implied and CT Page 6485 fairly provable under the allegations. . . . It does not include, however, the legal conclusions or opinions stated in the complaint." (Citation omitted.) Forbes v. Ballaro,31 Conn. App. 235, 239, 624 A.2d 389 (1993). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Faulkner v.United Technologies Corp., supra, 240 Conn. 580.
First Count (Intentional Infliction of Emotional Distress)
To state a cause of action for intentional infliction of emotional distress, the plaintiff must allege "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Petyanv. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."(Internal quotation marks omitted.) Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 20,597 A.2d 846 (1991).[2] "Whether the defendant's conduct . . . [is] sufficient . . . is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury." Id., 18.
In count one, Anastasio alleges the following words and acts by Gulino which, according to Anastasio, amount to intentional infliction of emotional distress.[3] He first claims that Gulino told him "that a superior should be the `enemy' of his subordinates and . . . that apology or minimally decent behavior to subordinates in the workplace was a sign of weakness." Complaint, ¶ 4. Next an argument between Gulino and a worker once escalated to the point where "Gulino, in [Anastasio's] presence but after the [worker] had left the area," ripped wires out of a computer. Complaint, ¶¶ 5-6. On a different occasion, Gulino "taunted" and "physically confronted" an employee in Anastasio's office and then in the hallway outside Anastasio's office. ¶ 7. In Anastasio's presence, Gulino also shoved a worker, thereby breaking his glasses. ¶ 8.
One time, Gulino yelled at Anastasio and other workers in the CT Page 6486 plaintiff's office, calling them "`stupid.'" One worker protested and Gulino, after loosening his clothing as if ready to fight, stated that he would `kill' the worker. Then Gulino said, as he looked at Anastasio, that "he would take any of the workers outside and `kill' them." ¶ 9.
With respect to Anastasio, Gulino called him "`nothing'" and "`stupid'" many times. ¶ 10. At one point, Gulino ordered that Anastasio remain in his office, not able to move about the premises as necessary to do his job properly. ¶ 11. Also, Gulino required Anastasio report to his office at the end of the day, at which time he made phone calIs as Anastasio waited. Then, he would ask Anastasio, "`Do you still work here?'" ¶ 12.
During one holiday season, Gulino was unable to find part of the Christmas tree assembly, and Gulino, in front of workers whom Anastasio supervised and with his face inches away from Anastasio, called him an "`asshole,'" "`nothing,'" and "`unprofessional.'" Anastasio said that Gulino was acting unprofessionally. In response, Gulino said "`never mind how I am acting. I act however I want to act. You have to act the way I want you to.'" He then left the room. A worker then said to Anastasio, "`I thought [Gulino] was going to hit you.'" Anastasio replied, "`that's all he would have to do.'" Gulino then "burst" back into the room. With his face two inches from Anastasio and while spraying "spittle" on Anastasio, "he screamed, `what would you do?! You would do nothing, nothing, nothing!'" ¶¶ 13-16.
On one occasion, Anastasio worked late when the sprinkler system caused a flood. He asked Gulino for compensatory time off. Gulino said, "`No! You get nothing!'" Anastasio then said that he would appreciate a "thank you" for his work. Gulino became enraged and said, "`did you call to break my balls? Because if you did, go f___ yourself!'" ¶¶ 17-18. While cleaning up the water damage, Anastasio sent home a worker whom he noticed had been drinking alcohol prior to coming back to work to help with the clean-up. Gulino attempted, unsuccessfully, to persuade the employee to file a complaint against Anastasio. ¶¶ 19-21.
On another occasion, Gulino "berated" Anastasio on the phone "about some trivial matter," and then came to Anastasio's office and continued berating him. Anastasio told him that "he was blowing the situation out of proportion." Anastasio began walking away from Gulino, but Gulino grabbed him and "forcibly" spun him around. ¶ 22. CT Page 6487
Gulino ordered Anastasio to report medical problems to him, not the company nurse. On one occasion, Anastasio was twenty minutes late for work because he experienced heavy bleeding in his stool due to ulcerative proctitis, a condition he claims he developed as a result of Gulino's "abusive" conduct. Anastasio told Gulino's secretary about his condition, and Gulino ordered that he take a sick day and go home. Gulino told Anastasio that he would not tolerate such tardiness, even though he knew why Anastasio was late. ¶¶ 23-27.
On another occasion, Anastasio received press attention for helping with the cleaning of a defaced religious statute. After this, Gulino, despite being Anastasio's direct supervisor, "refused" to speak to him. ¶ 28.
Considering the allegations as a whole, reasonable minds could eventually differ as to whether this conduct, if proven, rises to the necessary level of extreme and outrageous conduct to constitute intentional infliction of emotional distress, especially in light of Gulino's "management theory," which dictates abusive and dominating behavior toward subordinates. Construing the factual allegations in the light most favorable to the plaintiff, however, they are a sufficient allegation of extreme and outrageous conduct on the part of Gulino. The motion to strike is therefore denied as to count one.
Second Count (Negligent Infliction of Emotional Distress)
"[I]n order to state [a negligent infliction of emotional distress] claim, the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm. . . . Accordingly, negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." (Citations omitted; internal quotation marks omitted.)Parsons v. United Technologies Corp., 243 Conn. 66, 88,700 A.2d 655 (1997).
In regard to the manner in which he was terminated, Anastasio has alleged that he was brought to a vacant floor of KC's building and informed of his termination there, instead of in an available conference room. See Complaint, ¶¶ 29 (stating that "[o]n November 19, 1996, . . . Gulino and [another KC CT Page 6488 employee], escorted [Anastasio] to a vacant floor of [KC's] premises, although there were conference rooms available for meeting"). The plaintiff has not shown that it is unreasonable for an employer to take an employee to a vacant part of the company building to terminate that employee, especially given that the chance of a fellow co-worker overhearing or witnessing the termination would be diminished. See, Pavliscak v. BridgeportHospital, 48 Conn. App. 580 (1998).
Anastasio also alleges that, when he was terminated, he was offered "some additional benefits if by the end of the following day he signed an agreement waiving all his rights to bring any claims against [KC and Gulino]." Complaint, ¶ 29. Anastasio refused the offer. ¶ 29. Requesting a waiver of future claims by an employee in exchange for additional benefits upon discharge is not, however, unreasonable conduct. Anastasio was not forced into signing the waiver, and Anastasio does not allege any unreasonable conduct by Gulino to pressure or coerce him into giving such waiver. Without such conduct, the mere request for a waiver was not unreasonable.
Finally, Anastasio alleges that, later in the day after his termination, Gulino said to him, "`why did you call the nurse? Why did you tell the nurse you were sick?'" Complaint, ¶ 30. Gulino allegedly also "said that since [Anastasio] had reported being to the nurse on account of the stress inflicted by . . . Gulino, Gulino had decided [Anastasio] must be immediately terminated on the eve of the holiday season." ¶ 30. However, as alleged in the complaint by Anastasio, this conversation took place later in the day after Anastasio was already terminated, and there is no indication in the complaint that the termination was a continuing process which lasted beyond the initial termination earlier in the day. Thus, the conversation cannot be considered a part of the termination process.
Even if the court did consider the statement to be part of the termination process, it does not make the conduct of KC and Gulino unreasonable. The statement, as alleged by Anastasio, is ambiguous and its significance is difficult, if not impossible, to determine from the complaint alone. In any event, the statement merely goes to why Anastasio was terminated and does not, itself, nor in conjunction with the actual termination, constitute unreasonable conduct in the termination of an employee. Even if the statement may tend to show that Anastasio was wrongfully discharged, such allegations are insufficient to CT Page 6489 sustain a negligent infliction of emotional distress claim.See Parsons v. United Technologies Corp., supra, 243 Conn. 88-89 ("[t]he mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress"). Accordingly, the motion to strike is granted as to count two.
Third Count (Breach of Contract)
In the third count, Anastasio alleges a breach of an employment contract between himself and KC. The defendants move to strike the third count on the ground that Anastasio fails to allege that KC intended to be bound by the alleged "agreement."[4]
"To determine the contents of any particular implied contract of employment, the factual circumstances of the parties' relationship must be examined in light of legal rules governing unilateral contracts." Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., 234 Conn. 1, 13, 662 A.2d 89 (1995). "Pursuant to the legal principles governing such contracts, in order to find that an implied contract of employment incorporates specific representations orally made by the employer . . . , the trier of fact is required to find that the employer's oral representations . . . [is] an `offer.'" Id. As such, the plaintiff bears "the burden of proving by a fair preponderance of the evidence that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause." (Brackets in original; internal quotation marks omitted.) Id., 15.
Anastasio alleges in his complaint that "[a]t the time [he] was hired, Gulino promised him that he would not be terminated so long as he performed his work satisfactorily. Gulino said, `You will never have to find another job; but you must always be loyal to me and this building.'" Complaint, ¶ 31. Anastasio does not expressly allege in the complaint that KC intended by words or conduct to undertake an actual contract commitment to him. However, "for the purpose of a motion to strike, the moving party admits all facts well pleaded." RK Constructors, Inc. v. FuscoCorp., supra, 231 Conn. 383 n. 2. "This includes the facts necessarily implied and fairly provable under the allegations."Forbes v. Ballaro, supra, 31 Conn. App. 239. The complaint indicates that this statement was made by Gulino prior to Anastasio's acceptance of the initial offer. See Complaint, ¶ 32 CT Page 6490 (stating that "[t]his assurance, on which [Anastasio] relied in accepting the offered position, was a binding contractual promise"). Thus, the statement is alleged to have been made while the parties were attempting to reach an agreement and implies intent on behalf of KC to induce Anastasio's acceptance of the job offer. Therefore, it also necessarily implies that KC agreed by words to undertake a contractual commitment to Anastasio. The motion to strike is therefore denied as to count three.
Fourth Count (Termination in Violation of Public Policy)
Under Connecticut law, a plaintiff has "a common law cause of action for wrongful discharge in situations in which the reason for discharge involved impropriety . . . derived from some important violation of public policy." (Internal quotation marks omitted.) Parsons v. United Technologies Corp., supra,243 Conn. 76. "In evaluating claims, [the court] look[s] to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." (Internal quotation marks omitted.) Id., 77.
Anastasio alleges in his complaint that "[the defendants'] termination of [Anastasio] on account of his consulting with the company nurse for his serious medical problems violates important public policy and was unlawful." Complaint, ¶ 31. Anastasio does not allege in the complaint where the public policy derives from, nor what it entails. In his brief, however, he argues that the conduct of KC and Gulino violates public policy as expressed in certain Occupational Safety and Health Administration (OSHA) regulations, and that "Connecticut law does not require that the plaintiff specifically plead these statutes in the complaint," citing Faulkner v. United TechnologiesCorp., supra, 240 Conn. 588, for this proposition.
Faulkner is not dispositive of this issue. In Faulkner, the Connecticut Supreme Court stated that "it is not necessary that the plaintiff specifically allege that his discharge violated the public policy, expressed in Sheets, against employers forcing employees to commit criminal acts. The question of whether a challenged discharge violates public policy, state or federal, by forcing the commission of criminal acts, or otherwise, is a question of law to be decided by the court, not a question of fact that a plaintiff must allege in his complaint. . . . We simply do not agree with the defendant that Sheets imposed a CT Page 6491 pleading requirement on plaintiffs alleging wrongful discharge claims that such plaintiffs must plead conclusions of law in their complaints in addition to pleading the facts that constitute their causes of action." (Citations omitted.) Faulknerv. United Technologies Corp., supra, 240 Conn. 588. That case, however, did not hold that a plaintiff need not inform the court from where the alleged public policy is derived, nor which public policy their discharge allegedly violated; rather, it held that a plaintiff need not explicitly allege that the claimed public policy was violated by the wrongful discharge.[5]
It is consistent with Faulkner to require a plaintiff to specifically allege the nature and origin of the claimed public policy given that the public policy is a fact, not a legal conclusion, which must be pleaded in order that their allegations as a whole will constitute a cause of action. See Parsons v.United Technologies Corp., supra, 243 Conn. 77 (reviewing a stricken wrongful termination count and considering "whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy"); Morris v. Hartford CourantCo., 200 Conn. 676, 680-81, 513 A.2d 66 (1986) (finding that the plaintiff's wrongful termination count was properly stricken by the trial court given that the plaintiff did not "identify any particular public policy affronted by his termination,"nor "allege[s] that his discharge violated any explicit statutory or constitutional provision[, or] . . . any judicially conceived notion of public policy"). If a plaintiff is not required to plead which statute, constitutional provision, and/or judicial decision upon which he is relying for his public policy violation claim, then a defendant will not have sufficient notice as to the nature of the plaintiff's claim in order to prepare an appropriate defense. The plaintiff should therefore be required to allege the nature and the source of the public policy, whether it is statutory, constitutional, and/or judicial, allegedly violated by his termination. See Parsons v. United Technologies Corp., supra,243 Conn. 77 (finding the plaintiff's allegations of wrongful termination, which "made reference to several state statutes," sufficient to establish a public policy "requiring each employer to provide its employees with a reasonably safe workplace" and, therefore, to withstand a motion to strike). The motion to strike is therefore granted as to count four.
In summary, the defendants' motion to strike is denied as to CT Page 6492 counts one (intentional infliction of emotional distress) and three (breach of contract), and granted as to counts two (negligent infliction of emotional distress) and four (termination in violation of public policy).
Jonathan E. Silbert, Judge