[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION FOLLOWING RECONSIDERATION OF DEFENDANT PROFESSIONAL SERVICE INDUSTRIES, INC.'S MOTION FOR SUMMARY JUDGMENT (#201)
The plaintiffs Norman and Reine Pelletier have filed a complaint for personal injury damages and loss of consortium allegedly resulting from an accident at work suffered by Mr. Pelletier on June 20, 1994. The accident CT Page 7251 occurred at a construction site located in Shelton, Connecticut, generally referred to as the "Pitney Bowes project" (project)
The plaintiffs allege that Sordoni/Skanska Construction Company (Sordoni) was the general contractor and/or construction manager of the project and the plaintiff's employer, Berlin Steel Construction Company (Berlin Steel), was a sub-contractor on the project responsible for fabricating and installing the steel framework. The plaintiffs claim that Mr. Pelletier was injured at the project, as a result of being struck by a steel beam when a seat connection broke loose from a steel column. The seat connection had not been permanently welded to the steel column due to an error by employees of Berlin Steel.
In a memorandum of decision filed December 11, 2000 (#209), the court granted summary judgment on the negligence, breach of contract and loss of consortium claims asserted against Sordoni, on the basis that Sordoni as the general contractor may not be held liable for Mr. Pelletier's injuries caused by the negligence of his employer acting as Sordoni's sub-contractor at the time of the incident in suit.
The remaining counts of the complaint, as amended, allege negligence (fourth count) and a derivative loss of consortium claim (fifth count) against the defendant Professional Service Industries, Inc. (PSI). PSI was the inspection and testing company retained by Sordoni to replace the prior inspection company, Testwell Craig Laboratories of Connecticut, Inc. ("Testwell Craig"). PSI moved for summary judgment on September 21, 2000, which motion was denied by the court on December 5, 2000. In February, 2001, the court granted PSI's motion to reconsider the motion for summary judgment.
The following facts are dispositive of the issues before the court. Berlin Steel entered into a contract with Sordoni for all structural steel for the project. The sub-contractor incorporated certain engineering specifications, including specifications for structural steel, providing in pertinent part that:
2. .4 QUALITY CONTROL
 A. The material stated hereunder is for the purpose of contractor [Berlin Steel] knowing that inspection and testing will be done so that he can properly coordinate his work and properly prepare his bid. The inspections shall be performed by a qualified inspector under the supervision of a registered Connecticut Professional Engineer. CT Page 7252
 B. Inspection and testing may be provided by the Owner's independent Inspection and Testing Agency and is solely for the Owner's benefit. . . .
* * *
 D. Inspection and acceptance, or failure to inspect, shall in no way relieve Contractor from his responsibility to furnish satisfactory material strictly in accordance with the Contract Documents.
Berlin Steel fabricated the steel columns at its fabrication facility located at 73 Depot Road, Berlin, Connecticut. The procedure for fabrication of a steel column at Berlin Steel involved measuring the steel, marking the locations where holes were to be drilled or connections were to be made, and then welding any connections, such as seat connections, that were to be made on the column. Following the welding, an inspector from Berlin Steel was supposed to inspect the final product, including all welds performed.
On the day Mr. Pelletier was injured on the job, Berlin Steel was installing portions of the steel framework and the plaintiff was assisting with the installation. During this process, the plaintiff was struck by a steel beam when a seat connection broke loose from a steel column. The plaintiff is receiving worker's compensation benefits from his employer, Berlin Steel, for his injuries and lost income as a result of the accident.
The seat connection failed because it had been secured to the column by a single "tack weld", described as a small weld used to hold the piece in place pending a final weld. When the failed seat connection was welded to the column at Berlin Steel's fabrication facility, it was never fully welded. Thereafter, a final weld was never performed.
The Berlin Steel quality control manager's job functions included inspection of welds performed at Berlin Steel. The quality control manager failed to inspect the column onto which the failed seat connection had been placed, and failed to inspect the weld of the failed seat connection.
Berlin Steel's fabrication process involved welding all seat connections (including the connection that gave way, causing Mr. Pelletier's injury) on their respective columns at the fabrication facility prior to their shipment to the project. The seat connection weld that failed in this case had been welded to column 313. The fabrication of column 313 was completed on April 29, 1994. PSI did not replace CT Page 7253 Testwell Craig until May 12, 1994, several weeks after the fabrication of the failed seat connection. PSI, under its contract for this project, was required only to conduct periodic shop inspections of those welds it randomly selected to inspect and only at the place of fabrication. The contract expressly provided:
 H. Shop inspection may include periodic inspection at the place of fabrication and identification of tested materials, checking of fabrication for compliance with approved shop drawings and these Specifications, and inspection of shop painting, as well as the following:
* * *
 2. Shop Welding: Inspect and test during fabrication of structural steel assemblies as follows:
* * *
 b. Perform periodic visual inspections of random welds . . .
The court, on December 5, 2000, denied PSI's motion for summary judgment, noting:
 Motion for summary judgment is denied, as the plaintiffs have raised a material issue of fact as to PSI's obligation under the contract. A material issue exists as to whether PSI was obligated to inspect all welds.
The court ruled based on the plaintiffs' representation in their opposition to the motion for summary judgment (#205) that drawing S-9, note 21, mandated that PSI perform inspections of all shop welds, not random inspections. In support of this contention, the plaintiffs offered the deposition testimony of their expert, Mr. Albert Moore, Jr. This deponent also testified that the defectively welded column arrived at the project site on or about June 6, 1994, which timing, according to the plaintiffs, left PSI ample time and opportunity to inspect the welding prior to the date of the accident on June 20, 1994. The plaintiffs also argued that PSI's contract incorporated by reference the project specifications and drawings, and thereby imposed on PSI the mandates included in those documents.
Subsequent to the court's denial of PSI's motion for summary judgment, CT Page 7254 PSI deposed Mr. Emanuel Necula, the structural engineer of record on the project. This deposition was taken on January 30, 2001. Mr. Necula's testimony confirmed that the drawings were consistent with the contractual documents and that PSI's inspection obligation with respect to shop welds was limited to random visual inspection of those welds. On February 2, 2001, PSI filed a motion for reconsideration (#219) of the court's denial of PSI's motion for summary judgment, attaching a copy of Mr. Necula's January 30, 2001 deposition. The motion for reconsideration was granted and the court afforded the parties opportunities for further briefing, oral argument and submissions with regard to the issues relating to the summary judgment. (See #221).
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . ." (Citations omitted). Appleton v. Board of Education, 254 Conn. 205, 209 (2000). "A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . ." (Citations omitted; internal quotation marks omitted.) MountaindaleCondominium Assn. v. Zappone, 59 Conn. App. 311, 315 (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Noland v. Borkowski, 206 Conn. 495, 500 (1988).
The court finds that the deposition testimony of Mr. Necula resolves any issue regarding the extent of PSI's obligation under its contract. Its obligation was to perform random visual inspection of shop welds. PSI was not required under its contract or the drawings incorporated into the contract to perform 100% inspection of all shop welds.
The plaintiffs nevertheless assert that their negligence claim against PSI (fourth count of the amended complaint) is valid because PSI failed to perform its duty to review welder qualifications of Berlin employees. PSI was required to "check that welders were certified." (Section 2. .4 (H)(2)(a) of the Structural Steel Specifications, attached as Exhibit 9 to PSI's appendix to its motion for summary judgment)
"The essential elements of a cause of action in negligence are well CT Page 7255 established: duty; breach of that duty; causation and actual injury." (Citation omitted; internal quotation marks omitted.) Maffucci v. RoyalPark Ltd. Partnership, 243 Conn. 552, 566 (1998). "The issue of whether [a] defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law." Pion v. Southern NewEngland Telephone Co., 44 Conn. App. 657, 660 (1997). "If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Citation omitted.) Maffucci v. Royal Park Ltd. Partnership, supra,243 Conn. 567. Also see RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 384-85 (1994).
In a shop inspection report dated May 11, 1994, PSI noted that "[t]here are nine welders using Flux Core (FCAW-G) and shielded metal arc (SMAW); all are AWS qualified." (Exhibit A to PSI's supplemental memorandum, #224). Testwell Craig had previously determined that the Berlin Steel welders were qualified. Id., exhibit B. The welder who performed the weld that failed on the project was in fact "AWS certified". Id., exhibit C. Accordingly, there is no evidence that PSI neglected its duty to review welder qualifications. Nor is there any evidence before the court supporting a causative relationship or correlation between welder certification and the seat connection failing. The plaintiffs' own expert, Mr. Moore, confirmed at his deposition that no such causative factor or correlation exists. Id.
The plaintiffs also argue that "under the statement of special inspections, PSI assumed the obligation to perform 100% inspection of all structural steel welds." The plaintiffs, however, fail to provide factual support for this assertion. The Statement of Special Inspection (exhibit 3 attached to #208), a report prepared by the special inspector for the level of inspection required by the structural engineer, Mr. Necula, does not expressly state such a requirement. Indeed, contrary to the plaintiffs' assertion, the special inspector did not expect 100% inspections by PSI. (See Moore deposition excerpts at exhibit C attached to #224, p. 216).
Finally, any reliance by the plaintiffs on Gazo v. Stamford Transit,Inc., 255 Conn. 245 (2000), to impose on an independent contractor a duty of care to a third party, would be misplaced. Such a duty is expressly negated under the facts here, where section 2. .4 of the Structural Steel Specifications states that the inspection testing agency engaged by the owner (defendant PSI) shall not incur any responsibility for shop or field work which is the full responsibility of the steel contractor (Berlin Steel, the plaintiff's employer)
For the above reasons, summary judgment enters for the defendant PSI on CT Page 7256 the fourth count of the complaint, as amended. The loss of consortium claim asserted by Reine Pelletier in the fifth count is merely derivative of her husband's claim, Schiano v. Bliss Exterminating Co.,57 Conn. App. 406, 414 n. 7, (2000). Accordingly, judgment also enters for PSI on the fifth count of the amended complaint.
 CONCLUSION
Upon reconsideration, PSI's motion for summary judgment (#201) is granted. This case is dismissed
ROBERT F. MCWEENY, J.